**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| YAN SUN | : | |
| 214 Athena Court | : | |
| Wilmington, DE 19808 | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | No.: _____ |
| | : | |
| v. | : | |
| | : | |
| LASKO PRODUCTS, LLC | : | **JURY TRIAL DEMANDED** |
| 820 Lincoln Avenue | : | |
| West Chester, PA 19830 | : | |
| | : | |
| Defendant. | : | |
| | : | |

**CIVIL ACTION COMPLAINT**

Yan Sun (hereinafter referred to as "Plaintiff," unless indicated otherwise) by and through

his undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1.      Plaintiff has initiated this action to redress violations by Lasko Products, LLC

(hereinafter referred to as "Defendant") of Title VII of the Civil Rights Act of 1964 ("Title VII" –

42 U.S.C. §§ 2000(d) *et. seq*), Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42

U.S.C. § 1981), the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 et.

seq.), the Family and Medical Leave Act ("FMLA" – 29 U.S.C. § 2601 et. seq.), the Age

Discrimination in Employment Act ("ADEA" – 29 U.S.C. §§ 621 et seq.), and the Pennsylvania

Human Relations Act ("PHRA").[1]   As a direct consequence of Defendant's unlawful actions,

Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes.  He is required to wait 1 full year before
initiating a lawsuit from date of dual-filing with the EEOC.  Plaintiff must however file his lawsuit in advance of same

## JURISDICTION AND VENUE

2.      Plaintiff resides in and is a citizen of Delaware.

3.      Lasko Products, LLC is incorporated under the laws of Pennsylvania with headquarters and/or principal place of business in Pennsylvania, rendering it a citizen of Pennsylvania.

4.      The United States District Court for the Eastern District of Pennsylvania has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship, as Plaintiff is a citizen of Delaware, Defendant is a citizen of Pennsylvania, and the amount in controversy exceeds $75,000.

5.      This action is also being initiated pursuant to federal laws (Title VII, ADA, ADEA) and therefore, the United States District Court for the Eastern District of Pennsylvania also has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States.  This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

6.      This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the *United States Supreme Court in Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

---

because of the date of issuance of his federal right-to-sue-letter under Title VII, the ADA, and the ADEA.  Plaintiff's PHRA claims however will mirror identically his federal claims under Title VII, the ADA, and the ADEA.

7.      Venue is properly laid in this District pursuant to 28 U.S.C. sections 1391(b)(1) and (b)(2), because Plaintiff worked for Defendant in Pennsylvania, all actions underlying this case occurred in Pennsylvania, and because Defendant's principal place of business is in Pennsylvania.

8.      Plaintiff is proceeding herein (in part) under Title VII, the ADA, and the ADEA after properly exhausting all administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety ("90") days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

## PARTIES

9.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10.     Plaintiff is an adult individual with an address as set forth in the caption.

11.     Lasko Products, LLC, is a Pennsylvania corporation that manufacturers portable fans and other small air-moving appliances, with an address as set forth in the above caption.

12.     At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendant.

## FACTUAL BACKGROUND

13.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

14.     Plaintiff is a 60-year-old male.

15.     Plaintiff's race, ethnic characteristics, and ancestry are properly characterized in the following ways:

(a) Plaintiff is Chinese;

(b) Plaintiff is of Asian descent, having been born in Beijing, China; and

(c) Plaintiff speaks with a distinct and noticeable accent (albeit fluent in English).

16.     In or about June of 2011, Plaintiff was hired to work for Air King Ventilation Products, a former subsidiary of Defendant.

17.     Plaintiff became an Engineering Manager for Air King Ventilation Products in or about 2013.

18.     In or about November of 2016, Defendant was purchased by an equity finance company.

19.     In or about 2018, Plaintiff's former supervisor CEO of Air King Ventilation Products, John Fox (hereinafter "Fox") was laid off, and Plaintiff began to be supervised by a newly hired Vice President of Product Development and Engineering, John Harrington (hereinafter "Harrington" – Caucasian/American – age 40s).

20.     Air King Ventilation Products became a predecessor company of Air King America, LLC (hereinafter "Air King").

21.     Eventually Defendant and Air King became subsidiaries of the same holding company, and in 2020, Plaintiff became a direct employee of Defendant.

22.     Throughout his employment with Defendant, Plaintiff was a dedicated and hard-working employee who performed his job well.

23.     Approximately two years ago, Harrington hired a new Engineering Director, Bob Pike (hereinafter "Pike" – Caucasian/American – age early 50s), and Plaintiff began reporting directly to Pike.

24.     Plaintiff reported to Pike until his unlawful termination (discussed further *infra*) on or about February 10, 2022.

25.     As a Project Engineer for Defendant, Plaintiff had one direct report – Mechanical Engineer, Jason Sadeghi (hereinafter "Sadeghi" – Caucasian/American – age early 40s), who reported to Plaintiff 50% of the time and Pike 50% of the time.

26.     While under the supervision of Harrington and Pike, Plaintiff was treated in a discriminatory manner because of his age, race, ethnicity, and national origin.  For example, unlike employees who fell outside of his protected classes:

  a. Toward the last few years of his employment with Defendant, Plaintiff observed a concerted campaign to terminate older employees and replace them with younger current employees or new hires;

  b. Plaintiff was told not to speaking during meetings;

  c. Defendant's management delayed approving Plaintiff's request for vacation days, unlike his younger and/or non-Asian co-workers;

  d. Plaintiff was not given as high of a merit increase as his younger, Caucasian co-worker, Sadeghi at the end of 2020, even though they were both rated "Meets Expectations" in their year-end performance reviews;

  e. In or about late 2021, Plaintiff was elected as a candidate for the position of Home Ventilating Institute ("HVI") Director and asked if he could attend the HVI annual meeting; however, Plaintiff was not given permission by Defendant's management to join the meeting, even though HVI offered Plaintiff a free virtual meeting.  Instead, Harrington sent another Caucasian and/or non-Asian person to the onsite meeting and refused to send Plaintiff, even though he knew there was a free HVI virtual meeting seat available;

  f. Plaintiff was treated in a rude and demeaning manner;

g.  Plaintiff was subjected to discriminatory comments based on his discernable accent and dialect; and

h.  Plaintiff had policies and expectations selectively enforced against him.

27.    In or about May of 2021, Plaintiff was given a Mid-Year Performance Evaluation and was again rated a "Meets Expectations."

28.    However, in or about October of 2021, Plaintiff was abruptly presented with a Performance Improvement Plan ("PIP"), which was based on biased views and not supported by any solid evidence.

29.    During Plaintiff's PIP meeting with Pike, in or about October of 2021, Pike aggressively stated to Plaintiff "Pennsylvania is at-will employment state, an employer can terminate an employee at any time." Plaintiff perceived this meeting to be more threatening than an opportunity to help him succeed and improve upon his "alleged" deficiencies.

30.    Plaintiff refused to sign the PIP and sent his concerns regarding the same in an email to Pike and Senior Vice President of Human Resources, Gary Chant (hereinafter "Chant" – Caucasian/American).

31.    For example, in the aforesaid PIP, Pike indicated that Plaintiff needed to improve on his "written and spoken communication skills." This is not the first time that Pike had criticized Plaintiff's speech and writing, as English is Plaintiff's second language, and it is clear that he speaks with a discernable accent.

32.    However, despite that English is Plaintiff's second language and that he speaks with a strong accent, Plaintiff's communication has never been an issue with previous management (other than Harrington and Pike) and never affected his daily job duties. Plaintiff expressed the same to Pike (as well as other concerns Plaintiff had with the aforesaid PIP) in his rebuttal and

asked for specific examples for the alleged deficiencies outlined in the PIP; however, Plaintiff did not receive a response.

33.     Thereafter, during Plaintiff's weekly PIP meetings with Pike, Pike continued to criticize Plaintiff's speech and communications, related to his accent and dialect.  For example, Plaintiff was told that he had to ask his team during meetings if he was understood and he was required to send his emails to Pike in advance so that he could proofread them.  This was not only humiliating to Plaintiff but also degrading.

34.     Plaintiff again expressed to Pike that he had worked for the company for 10 years and had supervised a team off approximately 8 people, and his written or verbal communication was never an issue until coming under Pike's and Harrington's supervision.

35.     Moreover, when Plaintiff asked for specific examples of how his speech and written communications had affected his job duties or caused issues with the company, Pike was unable and/or refused to provide the same.

36.     After being issued the aforesaid PIP, Plaintiff began to experience mental health conditions, including but not limited to anxiety, depression, and insomnia, for which he now takes medication.

37.     As a result of Plaintiff's aforesaid health conditions, he was (at times) limited in his daily life activities, including but not limited to sleeping, engaging in social interaction, and working (among other daily life activities).

38.     As a result, on or about November 11, 2021, Plaintiff's wife sent Chant an email stating in part:

> I am writing to ask your support for my husband's health issue and my concern regarding his working environment.  Since he received a PIP he has been emotionally trapped in a cycle.  He was barely sleeping . . . Both doctor and I think he should take a sick leave immediately.  But he does not want to leave his work behind and insist there are a lot of things he need to do.  I think about forcing him

to take a break.  I would like to know your bene4t for sick leave and procedure."
[sic throughout].

39.     Furthermore, on or about December 2, 2021, Plaintiff sent a doctor's note to Chant

stating:

> To whom it may concern: Mr. Yan Sun, DOB: 06/12/1962, has been under my care
> since November for severe anxiety, depression and insomnia. He cannot drive
> safely to work. Please accommodate him work from home. Please contact me with
> any questions.

40.     While Plaintiff was permitted to continue working from home, no one from

Defendant ever responded to his wife's email and no information was provided regarding sick

leave or the procedure for the same.

41.     Plaintiff's last PIP meeting had occurred on or about November 12, 2021, and at

this meeting, there was no indication that Plaintiff would be terminated for not meeting the

expectations of the PIP.

42.     In fact, in or about December of 2021, Plaintiff was due to receive his annual

Performance Evaluation (like all other Engineers), but he was not given one.  Instead, Defendant's

management held Plaintiff's review until February 4, 2022.

43.     On or about Friday, February 4, 2022, Pike set up a meeting for Plaintiff's annual

review with Chant and Harrington without giving Plaintiff any advanced noticed and failed to send

Plaintiff his pre-annual review until the last second.

44.     After finishing the first section of the Performance Evaluation, Plaintiff was in

shock and quite frankly offended by the false statements made that he began to suffer a flare-up of

his aforesaid mental health conditions and asked to stop the meeting.

45.     Plaintiff was supposed to continue the Performance Evaluation meeting with

Defendant's management later that same day at 3:00 p.m.; however, Plaintiff's aforesaid mental

health conditions significantly worsened, and he was not able to participate in the meeting.   As a result, Plaintiff's wife sent Chant an email stating:

> Hi, Mr. Chant
> Yan Sun's health problem is getting very worse after the morning meeting and he is not able to continue meeting with you at 3pm. I need see his doctor immediately. Right now I do not think he can handle anything normally.  I will update his situation after meeting with his doctor.
> Best,
> Yan Chen (Yan Sun's wife)

46.     Plaintiff's request to postpone the meeting in order to see his doctor as a result of a flare-up of his aforesaid mental health conditions is a reasonable accommodation under the ADA.

47.     On or about Monday, February 7, 2022, Plaintiff sent a letter accompanied with doctor's notes requesting a medical leave of absence to Chant (a reasonable accommodation under the ADA).

48.     However, Defendant never responded to Plaintiff's requested medical leave of absence, instead on or about February 10, 2022, Chant sent Plaintiff a letter terminating his employment with Defendant for alleged performance issues.

49.     Despite Plaintiff informing Defendant's management and HR on multiple occasions leading up to his termination of the status of his aforesaid mental health conditions and need for medical leave for same, Defendant's management never informed Plaintiff of his individualized FMLA rights and/or eligibility, as required by the FMLA, and failed to designate such leave time as FMLA (or even ADA) qualifying intermittent absenteeism.   Therefore, Defendant failed to follow proper notice, designation, and informational regulations of the FMLA.

50.     In connection with his termination, Plaintiff was issued an unsolicited severance agreement – which upon information and belief, is not typically offered to Defendant's employees

who are terminated from their employment for alleged performance issues.[2]   Plaintiff did not

accept this offer of severance.

51.     Prior to abruptly terminating Plaintiff's employment, Defendant failed to (1) inform

Plaintiff of his individualized FMLA rights, which constitutes a failure to follow proper notice,

designation, and information regulations of the FMLA; (2) engage in the interactive process as

required under the ADA; and (3) accommodate Plaintiff under the ADA (set forth *supra*).

52.     Plaintiff believes and therefore avers that he was subjected to a hostile work

environment, including being issued pretextual discipline, because of (1) his race, ethnicity, and/or

national origin; (2) his age; (3) his actual, perceived, and/or record of health conditions; (4) his

requested accommodations for his aforesaid health conditions, and (5) his expressed concerns of

discrimination and retaliation.

53.     Plaintiff believes and therefore avers that his (1) race, ethnicity, and/or national

origin; (2) age; (3) aforesaid serious mental health conditions; (4) requested accommodations; and

(5) expressed concerns of discrimination and retaliation were motivating/determinative factors in

the termination of his employment with Defendant.

---

[2] *See e.g.*, *Staffieri v. Northwestern Human Servs.*, 2013 U.S. Dist. LEXIS 72115, at *25 (E.D. Pa. May 22, 2013) (employer's decision to offer Plaintiff severance on the condition he waive any FMLA claims, even though not a company policy, supported finding of pretext in FMLA claim, among other facts); *see also Karl v. City of Mountlake Terrace*, 2011 U.S. Dist. LEXIS 59085, at *13-14 (W.D. Wash. June 2, 2011) (severance agreements are admissible in retaliation claims when made contemporaneous to termination, as they are not governed by FRE 408); *Bartlett v. NIBCO Inc.*, 2011 U.S. Dist. LEXIS 28072, at *11 (N.D. Ind. March 18, 2011) ("Severance pay packages contingent upon a release of claims which are offered *contemporaneously with the notice of termination* are *not* covered by [Rule 408]," and the motive in offering same is admissible evidence in a retaliation claim and is admissible at trial in this case.) (citation omitted); *EEOC v. Republic Servs., Inc.*, 640 F. Supp. 2d 1267, 1300 (D. Nev. 2009) (denying summary judgment and considering as evidence in wrongful termination case that a company would offer severance when an employee is supposedly terminated in a manner that doesn't warrant severance per an explicit company policy).

## COUNT I
### Violation of Title VII of the Civil Rights Act of 1964 ("Title VII")
**([1] Race/National Origin Discrimination; [2] Hostile Work Environment; and [3] Retaliation)**

54.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

55.     During Plaintiff's employment with Defendant, he was subjected to discrimination through verbal reprimands, pretextual discipline, and derogatory and disparate treatment because of his race/national origin and/or his objections to/complaints of race/national origin discrimination.

56.     Instead of investigating Plaintiff's aforesaid complaints of race/national origin discrimination, Defendant's management ignored them and left his legitimate concerns unresolved.

57.     Following his complaints of race and/or national origin discrimination (discussed *supra*), Plaintiff was abruptly terminated on or about February 10, 2022, for pretextual reasons.

58.     Plaintiff believes and therefore avers that he was really subjected to a hostile work environment, issued pre-textual admonishment and/or discipline and terminated because of his race/national origin and his objections to/complaints about race/national origin discrimination.

59.     These actions as aforesaid constitute violations of Title VII.

## COUNT II
### Violations of 42 U.S.C. § 1981
**([1] Race, Ancestry and Ethnic Discrimination; [2] Hostile Work Environment; and [3] Retaliation)**

60.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

61.     During Plaintiff's employment with Defendant, he was subjected to discrimination through verbal reprimands, pretextual discipline, and derogatory and disparate treatment because

of his race, ethnic and ancestral characteristics and/or his objections to/complaints of race and ethnic discrimination.

62.     Instead of investigating Plaintiff's aforesaid complaints of race and ethnic discrimination, Defendant's management ignored them and left his legitimate concerns unresolved.

63.     Following his complaints of race and ethnic discrimination (discussed *supra*), Plaintiff was abruptly terminated on or about February 10, 2022, for pretextual reasons.

64.     Plaintiff believes and therefore avers that he was really subjected to a hostile work environment, issued pretextual admonishment and/or discipline and terminated because of his race, ancestry,[3] and ethnicity,[4] and his objections to/complaints about race, ancestry, and ethnic discrimination.

---

[3] Courts have overwhelmingly concluded that one's accent is a linguistic characteristic of their "ancestry," **which is expressly protected under Section 1981**. It is actually **well established** that Section 1981 prohibits racial discrimination based upon one's race/ancestry <u>and linguistic characteristics</u>. In *Chandoke v. Anheuser-Busch, Inc*., 843 F. Supp. 16, 18-20 (D.N.J. 1994), the court explained that Indian ancestry is protected under Section 1981 and that accents relate to not only national origin discrimination *but also racial discrimination*. *See also Gupta v. Sears, Roebuck & Co*., 2007 WL 2253609, at *3 (W.D. Pa. 2007) (denying motion to dismiss because the plaintiff adequately pleaded Indian ancestry, which is a race, and a discernable accent as to claims under Section 1981); *Saleh v. Upadhyay*, 11 Fed. Appx. 241, 264 (4th Cir. 2001) (affirming a trial verdict in favor of a plaintiff asserting for, among other claims, a claim under 42 U.S.C § 1981 for discrimination because of his accent); *Lopez v. Indiana-Kentucky Elec. Corp*., 2006 U.S. Dist. LEXIS 84337, *2 (S.D. Ind. 2006) (denying summary judgment on plaintiff's Section 1981 claim due to hostility towards his Spanish accent); *Minetos v. City University of New York*, 875 F. Supp. 1046, 1053 (S.D. N.Y. 1995)(Hispanic secretary with college's music department stated a Section 1981 cause of action by alleging that she was not allowed to be head secretary because she had a Hispanic accent); *Ortiz v. Bank of America*, 547 F. Supp. 550, 553 (D. Cal. 1982)(Puerto Rican asserting employment discrimination because of accent states cause of action under Section 1981); *Nedeltchev v. Sheraton St. Louis City Center Hotel & Suites*, 335 Fed. Appx. 656, 657 (8th Cir. 2009) (finding European Slavic plaintiff states a cause of action under Section 1981 for harassment because of his ancestry and accent); *Saleh v. Upadhyay*, 11 Fed. Appx. 241, 260 (4th Cir. 2001)(affirming verdict for Nigerian born professor under Section 1981 for among other things, discrimination against his accent); *Mavrommatis v. Carey Limousine Westchester, Inc*., 2010 U.S. Dist. LEXIS 74296 (D. Conn. 2010)(holding 1981 claim satisfied by discrimination because of accent but dismissing case on other grounds); *Rumala v. New York City Transit Auth*., 2005 WL 2076596, *8-9 (E.D.N.Y. 2005)(construing complaint as one of ancestry, as well as national origin, when plaintiff's claims included alleged discriminated based on an alleged accent); *Franchitti v. Bloomberg, L.P*., 2004 WL 2366183, at * 2-4 (S.D.N.Y. 2004) (inferring that § 1981 claim was based on ancestry when plaintiff's accent was one of the alleged bases for discrimination).

[4] *See Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1387, n.7 (10th Cir. 1991) (noting that the concept of race under § 1981is broad, extending to matters of ancestry which are normally associated with nationality, not race in a biological sense); *Vodopwec v. Anthony's LLC*, 2018 U.S. Dist. LEXIS 129446, *9-10 (D.N.J. 2018) ("Courts have interpreted "race" for purposes of section 1981 to include "ancestry or ethnic characteristics" (quoting *St. Francis College*, 481 U.S. at 613); *Commodari v. Long Island Univ.*, 89 F. Supp. 2d 353, 374 (E.D.N.Y. 2000) (holding section

65.     These actions as aforesaid constitute unlawful discrimination and retaliation under Section 1981.

**COUNT III**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Hostile Work Environment;**
**[3] Retaliation; and [4] Failure to Accommodate)**

66.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

67.     Plaintiff suffered from qualifying health conditions under the ADA which affected his ability (at times) to perform some daily life activities.

68.     Plaintiff kept Defendant's management informed of his serious medical conditions and need for medical treatment and other accommodations.

69.     Despite Plaintiff's aforementioned health conditions and limitations, he was still able to perform the duties of his job well with Defendants; however, Plaintiff did require reasonable medical accommodations at times.

70.     Plaintiff requested reasonable accommodations from Defendants, including but not limited to intermittent and block time off from work to care for and treat for his serious health condition.

71.     Plaintiff was subjected to hostility and animosity due to his health conditions and/or requests for accommodations through demeaning, discriminatory, and disparate treatment toward him (as discussed *supra*).

72.     Plaintiff complained of and objected to the aforementioned instances of disparate treatment and discrimination to Defendant's management.

---

1981     applies     to     discrimination     on     the     basis     of     Italian     ancestry).

73. In response to Plaintiff's complaints, Defendant's management bombarded Plaintiff with increased hostility and animosity through verbal reprimands, pretextual discipline, and disparate treatment.

74. Plaintiff was terminated from his employment with Defendant for pretextual reasons ***just a few days*** after requesting/utilizing reasonable accommodations (*i.e.,* medical leave) and in close proximity to his objections to/complaints unfair treatment as a result of the same.

75. Prior to abruptly terminating Plaintiff's employment, Defendant failed to (1) engage in the interactive process as required under the ADA; and (2) accommodate Plaintiff under the ADA (set forth *supra*).

76. Plaintiff believes and therefore avers that he was subjected to a hostile work environment and pretextual admonishment and/or discipline because of (1) his known, perceived and/or record of disabilities; (2) in retaliation for his requested accommodations through disparate treatment, demeaning and/or discriminatory treatment toward him (as discussed *supra*); and/or (3) his expressed objections to/concerns of unfair treatment as a result of his disabilities and/or requests for medical accommodations.

77. Plaintiff believes and therefore avers that (1) his known, perceived and/or record of disabilities; (2) his requested reasonable medical accommodations; (3) his expressed objections to/concerns of unfair treatment as a result of his disabilities and/or requests for accommodations; and (4) Defendant's failure to properly accommodate his health conditions (set forth *supra*), were motivating/determinative factors in the termination of his employment with Defendant.

78. These actions as aforesaid constitute violations of the ADA.

**COUNT IV**
**Violations of the Family and Medical Leave Act ("FMLA")**
**([1] Retaliation & [2] Interference)**

79.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

80.     Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

81.     Plaintiff requested leave from Defendant, his employer, with whom he had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

82.     Plaintiff had at least 1,250 hours of service with Defendant during his last full year of employment.

83.     Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

84.     Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

85.     Any intermittent and/or block leave that Plaintiff requested during his last full year of employment with Defendant, would have been considered FMLA-qualifying leave.

86.     Plaintiff was terminated just days after requesting and/or utilizing intermittent and/or block medical leave to care for and treat his serious health conditions.

87.     Defendant committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising his FMLA rights and/or for taking FMLA-qualifying leave; (2) considering Plaintiff's FMLA leave needs in making the decision to terminate him; (3) failing to inform Plaintiff of his individualized FMLA rights, which constitutes a failure to follow proper notice, designation, and information regulations of the FMLA; (4) terminating

Plaintiff to intimidate him and/or prevent him from taking FMLA- qualifying leave in the future;

(5) by making negative comments and/or taking actions towards him that would dissuade a

reasonable person from exercising his rights under the FMLA; and (6) failing to designate

Plaintiff's requests for time off beginning on or about February 4, 2022 as FMLA-qualifying leave.

88.　　These actions as aforesaid constitute violations of the FMLA.

## COUNT V
## Violation of the Age Discrimination in Employment Act ("ADEA")
### ([1] Age Discrimination and [2] Hostile Work Environment)

89.　　The foregoing paragraphs are incorporated herein in their entirety as if set forth in

full.

90.　　Plaintiff was treated disparately with respect to policies, work, and termination

contrary to individuals younger than him.

91.　　Plaintiff was abruptly terminated on or about February 10, 2022, for pretextual

reasons.

92.　　Upon information and belief, after Plaintiff was terminated, his work for Defendant

is being performed by a younger, less experienced individual who does not possess the level of

qualifications and seniority Plaintiff had obtained working with Defendant.

93.　　Plaintiff believes and therefore avers that his age was a motivating/determinative

factor in the termination of his employment with Defendant.

94.　　These actions as aforesaid constitute unlawful age discrimination under the ADEA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.　　Defendant is to promulgate and adhere to a policy prohibiting discrimination and

retaliation in the future against any employee(s);

B.　　Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole

for any and all pay and benefits Plaintiff would have received had it not been for Defendant's

16

illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.      Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

F.      Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:      _____

Ari R. Karpf, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated:  October 31, 2022

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

<u>CASE MANAGEMENT TRACK DESIGNATION FORM</u>

|  |  |  |
|---|---|---|
| Yan Sun | : | CIVIL ACTION |
| v. | : | |
| | : | |
| Lasko Products, LLC | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (X )

| | | |
|---|---|---|
| 10/31/2022. | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Clv. 660) 10/02

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: ___214 Athena Court, Wilmington, DE 19808_____

Address of Defendant: ___820 Lincoln Avenue, West Chester, PA 19830_____

Place of Accident, Incident or Transaction: ___Defendant's place of business_____

---

***RELATED CASE, IF ANY:***

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when **Yes** is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☒

I certify that, to my knowledge, the within case  ☐ **is** / ☒ **is not**  related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: ___10/31/2022_____    _____    ___ARK2484 / 91538_____
                                        *Attorney-at-Law / Pro Se Plaintiff*           *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

*A.  Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☒ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
    *(Please specify): _____*

*B.  Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify): _____*
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
    *(Please specify): _____*

---

### ARBITRATION CERTIFICATION
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, ___Ari R. Karpf_____ , counsel of record *or* pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: ___10/31/2022_____    _____    ___ARK2484 / 91538_____
                                        *Attorney-at-Law / Pro Se Plaintiff*           *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

SUN, YAN

**(b)** County of Residence of First Listed Plaintiff    New Castle
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com

## DEFENDANTS

LASKO PRODUCTS, LLC

County of Residence of First Listed Defendant    Chester
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- 1  U.S. Government Plaintiff
- X 3  Federal Question *(U.S. Government Not a Party)*
- 2  U.S. Government Defendant
- 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

### CONTRACT
- 110 Insurance
- 120 Marine
- 130 Miller Act
- 140 Negotiable Instrument
- 150 Recovery of Overpayment & Enforcement of Judgment
- 151 Medicare Act
- 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- 153 Recovery of Overpayment of Veteran's Benefits
- 160 Stockholders' Suits
- 190 Other Contract
- 195 Contract Product Liability
- 196 Franchise

### REAL PROPERTY
- 210 Land Condemnation
- 220 Foreclosure
- 230 Rent Lease & Ejectment
- 240 Torts to Land
- 245 Tort Product Liability
- 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- 310 Airplane
- 315 Airplane Product Liability
- 320 Assault, Libel & Slander
- 330 Federal Employers' Liability
- 340 Marine
- 345 Marine Product Liability
- 350 Motor Vehicle
- 355 Motor Vehicle Product Liability
- 360 Other Personal Injury
- 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- 365 Personal Injury - Product Liability
- 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- 370 Other Fraud
- 371 Truth in Lending
- 380 Other Personal Property Damage
- 385 Property Damage Product Liability

### CIVIL RIGHTS
- 440 Other Civil Rights
- 441 Voting
- X 442 Employment
- 443 Housing/ Accommodations
- 445 Amer. w/Disabilities - Employment
- 446 Amer. w/Disabilities - Other
- 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
- 463 Alien Detainee
- 510 Motions to Vacate Sentence
- 530 General
- 535 Death Penalty
**Other:**
- 540 Mandamus & Other
- 550 Civil Rights
- 555 Prison Condition
- 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- 625 Drug Related Seizure of Property 21 USC 881
- 690 Other

### LABOR
- 710 Fair Labor Standards Act
- 720 Labor/Management Relations
- 740 Railway Labor Act
- 751 Family and Medical Leave Act
- 790 Other Labor Litigation
- 791 Employee Retirement Income Security Act

### IMMIGRATION
- 462 Naturalization Application
- 465 Other Immigration Actions

### BANKRUPTCY
- 422 Appeal 28 USC 158
- 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- 820 Copyrights
- 830 Patent
- 835 Patent - Abbreviated New Drug Application
- 840 Trademark

### SOCIAL SECURITY
- 861 HIA (1395ff)
- 862 Black Lung (923)
- 863 DIWC/DIWW (405(g))
- 864 SSID Title XVI
- 865 RSI (405(g))

### FEDERAL TAX SUITS
- 870 Taxes (U.S. Plaintiff or Defendant)
- 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- 375 False Claims Act
- 376 Qui Tam (31 USC 3729(a))
- 400 State Reapportionment
- 410 Antitrust
- 430 Banks and Banking
- 450 Commerce
- 460 Deportation
- 470 Racketeer Influenced and Corrupt Organizations
- 480 Consumer Credit
- 490 Cable/Sat TV
- 850 Securities/Commodities/ Exchange
- 890 Other Statutory Actions
- 891 Agricultural Acts
- 893 Environmental Matters
- 895 Freedom of Information Act
- 896 Arbitration
- 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- X 1 Original Proceeding
- 2 Removed from State Court
- 3 Remanded from Appellate Court
- 4 Reinstated or Reopened
- 5 Transferred from Another District *(specify)*
- 6 Multidistrict Litigation - Transfer
- 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
TITLE VII (42USC2000); SECTION 1981 (42USC1981); ADA (42USC12101); FMLA (29USC2601); ADEA (29USC621)

Brief description of cause:
Violations of the TITLE VII, SECTION 1981, ADA, FMLA, ADEA and the PHRA.

## VII. REQUESTED IN COMPLAINT:

- CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    X Yes    No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE
10/31/2022

SIGNATURE OF ATTORNEY OF RECORD

### FOR OFFICE USE ONLY

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

Print     Save As...     Reset